IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| DEMOND HORSLEY, <br>     Plaintiff, <br> <br> v. <br> <br> TURTLE CREEK ASSETS, LTD., <br> GORDON ENGLE, individually, <br> CHECK RECOVERY & DIVERSIFIED SERVICES LLC, <br> and BELINDA GIBBONS, individually <br>     Defendants. | Case No.:  6:17-cv-360 |

## COMPLAINT

Plaintiff Demond Horsley ("Plaintiff"), by and through his undersigned counsel, brings this lawsuit against Turtle Creek Assets, Ltd. ("Turtle Creek"), Gordon Engle, individually, ("Engle"), Check Recovery & Diversified Services LLC ("CRDS") and Belinda Gibbons ("Gibbons"), individually, and alleges as follows:

### NATURE OF ACTION

1. This lawsuit is brought pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq*. and the Texas Finance Code ("TFC") § 392.001, *et seq*.

### JURISDICTION AND VENUE

2. This Court has jurisdiction pursuant to 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

3. This Court has jurisdiction over defendants because these companies and their owners regularly conducted business activities in the State of Texas or directed business activities toward Texas residents in order to profit from their endeavors in this state or from residents of this State, thus purposefully availing themselves of the benefits of doing

business here.  In so doing, the defendants expected or should have expected to be hailed into court in Texas.

4. Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367.

5. Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b), where the acts and transactions giving rise to Plaintiff's action occurred in this State and this District, and where Plaintiff resides in this State and this District.

## PARTIES

6. The Plaintiff, Demond Horsley ("Plaintiff"), is an adult individual residing in Panola County, Texas, and is a "consumer" as the term is defined by 15 U.S.C. § 1692a(3) and Tex. Fin. Code § 392.001(1).

7. Turtle Creek is a company operating from Dallas, Texas.

8. Turtle Creek can be served via its registered agent, Gordon Engle, at 5331 Spring Valley Rd., Dallas, Texas 75254.

9. Turtle Creek is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) and Tex. Fin. Code § 392.001(6) and is a "third-party debt collector" as that term is defined by Tex. Fin. Code § 392.001(7).

10. Engle is a natural person, residing at 16424 Green Dolphin Lane, Cornelius, NC  28031.

11. Engle actively manages Turtle Creek and directs their policies.  Engle regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Engle uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts.

12. Engle is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) and Tex. Fin. Code § 392.001(6) and is a "third-party debt collector" as that term is defined by Tex. Fin. Code § 392.001(7).

13. Engle's collection business has apparently been quite successful, illegal as it may be, as he owns a nice home sitting on waterfront property, a 2009 Porsche 911 Turbo, a 2015 Land Rover Range Rover Sport, a 2014 Jeep Wrangler Rubicon and several boats and/or personal watercraft.

14. CRDS is a Georgia company operating from Atlanta, Georgia.

15. CRDS is not registered to do business in Texas, but it can be served via its registered agent, Belinda Gibbons, at 3300 Buckeye Rd., Atlanta, Georgia 30341.

16. CRDS is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) and Tex. Fin. Code § 392.001(6) and is a "third-party debt collector" as that term is defined by Tex. Fin. Code § 392.001(7).

17. Gibbons is a natural person believed to be residing at 6240 Cedar Close, Fairburn, GA 30213.

18. Gibbons actively manages CRDS and directs its policies. Gibbons regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Gibbons uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts.

19. Gibbons is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) and Tex. Fin. Code § 392.001(6) and is a "third-party debt collector" as that term is defined by Tex. Fin. Code § 392.001(7).

**FACTUAL ALLEGATIONS**

20. Sometime prior to the filing of this Complaint, Plaintiff allegedly incurred a financial obligation that was used primarily for personal, family or household purposes (hereinafter the "Account").  Specifically, Plaintiff believes the account was an old furniture rent to own account that originated Aaron's, Inc.

21. The Account allegedly went into default with the original creditor prior to the filing of this Complaint.

22. After the Account allegedly went into default, the Account was sold to or otherwise transferred to Turtle Creek for collection.

23. Turtle Creek then hired CRDS to collect on the account.

24. The furniture which was the subject of the Account was used in a personal manner by Plaintiff and was not used for business purposes.

25. The Account constitutes a "debt" as that term is defined by 15 U.S.C. § 1692a(5) and is a "consumer debt" as that term is defined by Tex. Fin. Code § 392.001(2).

26. Plaintiff disputes the amount Turtle Creek and CRDS are attempting to collect Account.

27. Plaintiff requests that defendants cease all further communication on the Account.

28. CRDS's collector(s) were employee(s) of CRDS at all times mentioned herein.

29. CRDS acted at all times mentioned herein through its employee(s).

30. Turtle Creek's collector(s) were employee(s) of Turtle Creek at all times mentioned herein.

31. Turtle Creek acted at all times mentioned herein through its employee(s).

32. During the one year prior to the date of the filing of this Complaint, CRDS and/or representative(s), employee(s) and/or agent(s) of CRDS made telephone calls to and received telephone calls from Plaintiff to collect the Account.

33. In approximately August 2016, CRDS attempted collections by engaging Plaintiff in telephone communications and telling him in several different phone calls:

    a. That CRDS was not a collection agency but a "mediation firm;"

    b. That, to keep from going to jail, Plaintiff needed to make a payment of $475 immediately and agree to three additional payments of $475;

    c. That Turtle Creek wanted to have Plaintiff "sitting in a cell;"

    d. Identified itself as "County Recovery Services" despite its actual name being Check Recovery & Diversified Services;

    e. That Turtle Creek had a "criminal affidavit" scheduled to go out the next day and explained that the "criminal affidavit" was a warrant for Plaintiff's arrest;

34. The most disturbing statement from CRDS to Plaintiff was that CRDS would shoot Plaintiff in the head.

35. Plaintiff did some research on the chain of title on the account to confirm that CRDS had authority to collect from Plaintiff on the Account. In doing so, he learned from Aaron's, Inc. that Turtle Creek was the owner of the Account.

36. Plaintiff called Turtle Creek to discuss the Account and CRDS's collection attempts and was told that CRDS had the account.

37. Plaintiff told Turtle Creek that CRDS had said a warrant would be issued and Turtle Creek confirmed CRDS's statement.

38. Turtle Creek also falsely confirmed to Plaintiff that CRDS was not a debt collector.

39. Turtle Creek connected Plaintiff to CRDS and remained on the phone while CRDS told Plaintiff that a uniformed person would be coming to find him and serve him with documents, and told Plaintiff that the documents could be a garnishment, a court date, or

the beginning stages of a warrant. Turtle Creek's employee never interrupted or corrected CRDS; rather, Turtle Creek affirmed and adopted these statements impliedly and/or directly.

40. The language used by CRDS in the telephone communications described above would cause the least sophisticated consumer to believe that CRDS intended to do bodily harm to him or her unless the account was paid.

41. The language used by CRDS in the telephone communications described above would cause the least sophisticated consumer to believe that CRDS or Turtle Creek intended to have him or her arrested for non-payment of the Account and/or sue him or her on the Account.

42. Neither CRDS, nor Turtle Creek, had a present intention of having Plaintiff arrested or suing Plaintiff on the Account at the time of the communications described above.

43. As of the filing of this complaint, neither Turtle Creek nor CRDS have filed suit on the Account against Plaintiff or had Plaintiff arrested.

44. The information communicated to Plaintiff by CRDS and Turtle Creek was false and misleading.

45. CRDS and Turtle Creek knew that the information provided to Plaintiff was false.

46. CRDS and Turtle Creek told Plaintiff the above-described false information in order to trick, deceive and manipulate Plaintiff into transmitting money to CRDS.

47. Plaintiff did not know that the information conveyed to him regarding the Account's status was false.

48. The statements made to Plaintiff during CRDS's collection attempts described in the paragraphs above would cause the least sophisticated consumer to believe that CRDS

and/or Turtle Creek had involuntary methods of securing financial remedies, such as seizure, garnishment, attachment, or sale of any of the Plaintiff's property or wages available to CRDS and/or Turtle Creek to collect the Account.

49. Turtle Creek influenced and/or determined the collection policies and collection procedures used by CRDS, both formal and informal, and provided instructions, directly or indirectly, to the employees of CRDS regarding the things said to Plaintiff in the various attempts to collect from Plaintiff.

50. Turtle Creek , knowing the statements described above were not true, nonetheless instructed CRDS's collectors to say the things described above when calling Plaintiff and other consumers.

51. Turtle Creek hired CRDS to collect the Account knowing CRDS would say the things described above and knowing that Plaintiff would not be sued on the Account.

52. Turtle Creek hires many debt collectors with collection practices similar to the ones described above to collect its Accounts.

53. In the communications described above, CRDS failed to inform Plaintiff that CRDS was a debt collector.

54. In the communications described above, CRDS failed to inform Plaintiff that CRDS was attempting to collect a debt and that any information obtained by CRDS would be used for the purpose of debt collection.

55. In the communications described above, CRDS failed to provide Plaintiff with meaningful disclosure of its identity as required by 15 U.S.C. § 1692d(6).

56. In the communications described above, Turtle Creek failed to inform Plaintiff that Turtle Creek was a debt collector.

57. In the communications described above, Turtle Creek failed to inform Plaintiff that Turtle Creek was attempting to collect a debt and that any information obtained by Turtle Creek would be used for the purpose of debt collection.

58. CRDS failed to provide Plaintiff with the notification of his rights under 15 U.S.C. § 1692g.

59. Turtle Creek failed to provide Plaintiff with the notification of his rights under 15 U.S.C. § 1692g.

60. Turtle Creek were aware of the practices employed by CRDS as described above to collect the accounts Turtle Creek placed with CRDS.

61. At all times relevant to the allegations contained in this Complaint, CRDS did not have a bond on file with the Texas Secretary of State as required by Tex. Fin. Code § 392.101.

62. Turtle Creek knew that CRDS did not have a bond on file with the Texas Secretary of State as required by Tex. Fin. Code § 392.101.

63. At all times relevant to the allegations contained in this Complaint, Turtle Creek did not have a bond on file with the Texas Secretary of State as required by Tex. Fin. Code § 392.101.

64. Turtle Creek profited from the abusive collection tactics employed by CRDS as described above.

65. The telephone call(s) each individually conveyed information regarding the Account directly or indirectly to Plaintiff.

66. The telephone call(s) each individually constituted a "communication" as defined by 15 U.S.C § 1692a(2).

67. CRDS's purpose for the communications described above was to attempt to collect the Account.

68. The only reason that CRDS and/or representative(s), employee(s) and/or agent(s) of CRDS made telephone call(s) to the Plaintiff was to attempt to collect the Account.

69. The only reason that CRDS and/or representative(s), employee(s) and/or agent(s) of CRDS had telephone conversation(s) with the Plaintiff was to attempt to collect the Account.

70. All of the act(s) and omission(s) by CRDS and/or its employees and/or agents alleged in the preceding paragraphs were done knowingly and willfully by CRDS.

71. Turtle Creek's purpose for the communications described above was to attempt to collect the Account.

72. The only reason that Turtle Creek and/or representative(s), employee(s) and/or agent(s) of Turtle Creek made telephone call(s) to the Plaintiff was to attempt to collect the Account.

73. The only reason that Turtle Creek and/or representative(s), employee(s) and/or agent(s) of Turtle Creek had telephone conversation(s) with the Plaintiff was to attempt to collect the Account.

74. All of the act(s) and omission(s) by Turtle Creek and/or its employees and/or agents alleged in the preceding paragraphs were done knowingly and willfully by Turtle Creek.

75. Engle set the policies of Turtle Creek and instructed its employees to act as they did.

76. Gibbons set the policies of CRDS and instructed its employees to act as they did.

## **RESPONDEAT SUPERIOR**

77. The representative(s) and/or collector(s) at CRDS were employee(s) and/or agents of CRDS at all times mentioned herein.

78. The representative(s) and/or collector(s) at CRDS were acting within the course and/or scope of their employment at all times mentioned herein.

79. The representative(s) and/or collector(s) at CRDS were under the direct supervision and/or control of CRDS at all times mentioned herein.

80. The actions of the representative(s) and/or collector(s) at CRDS are imputed to their employer, CRDS.

81. CRDS acted at all times as an agent of Turtle Creek.

82. The actions of CRDS are imputed to Turtle Creek.

83. Turtle Creek was aware of the collection practices used by CRDS.

84. The representative(s) and/or collector(s) at Turtle Creek were employee(s) and/or agents of Turtle Creek at all times mentioned herein.

85. The representative(s) and/or collector(s) at Turtle Creek were acting within the course and/or scope of their employment at all times mentioned herein.

86. The representative(s) and/or collector(s) at Turtle Creek were under the direct supervision and/or control of Turtle Creek at all times mentioned herein.

87. The actions of the representative(s) and/or collector(s) at Turtle Creek are imputed to their employer, Turtle Creek.

## **COUNT I: VIOLATIONS OF THE FDCPA 15 U.S.C. § 1692, et seq. BY CHECK RECOVERY & DIVERSIFIED SERVICES LLC**

88. The previous paragraphs are incorporated into this Count as if set forth in full.

89. The act(s) and omission(s) of CRDS and its representative(s), employee(s) and/or agent(s) violated 15 U.S.C. §1692d(2)&(6) and §1692e(2)&(4)&(5)&(8)&(10)&(11) and § 1692g(a)(2).

90. Pursuant to 15 U.S.C. § 1692k Plaintiff seeks damages, reasonable attorney's fees and costs from CRDS.

### COUNT II: VIOLATIONS OF THE TEXAS FINANCE CODE BY CHECK RECOVERY & DIVERSIFIED SERVICES LLC

91. The previous paragraphs are incorporated into this Count as if set forth in full.

92. The act(s) and omission(s) of CRDS and its representative(s), employee(s) and/or agent(s) violated Tex. Fin. Code 392.101 and §392.301(a)(7) and §392.302(1)&(2) and §392.304(a)(4)&(5)&(8)&(14)&(19).

93. Pursuant to Tex. Fin. Code § 392.403, Plaintiff seeks statutory and actual damages, reasonable attorney's fees and costs from CRDS.

94. Pursuant to Tex. Fin. Code § 392.403, Plaintiff seeks an injunction against CRDS enjoining it from future violations of the Texas Finance Code as described herein.

### COUNT III: INVASION OF PRIVACY (INTRUSION ON SECLUSION) BY CHECK RECOVERY & DIVERSIFIED SERVICES LLC

95. In the alternative, without waiving any of the other causes of action herein, without waiving any procedural, contractual, statutory, or common-law right, and incorporating all other allegations herein to the extent they are not inconsistent with the cause of action pled here, CRDS is liable to Plaintiff for invading Plaintiff's privacy (intrusion on seclusion). CRDS intentionally intruded on Plaintiff's solitude, seclusion, or private affairs, and such intrusion would be highly offensive to a reasonable person.

96. Plaintiff suffered actual damages from CRDS as a result of CRDS's intrusion.

### COUNT IV:  VIOLATIONS OF THE FDCPA 15 U.S.C. § 1692, et seq.
### BY TURTLE CREEK ASSETS LTD.

97. The previous paragraphs are incorporated into this Count as if set forth in full.

98. The act(s) and omission(s) of Turtle Creek and its representative(s), employee(s) and/or agent(s) violated 15 U.S.C. §1692d(2)&(6) and §1692e(2)&(4)&(5)&(8)&(10)&(11) and § 1692g(a)(2).

99. Pursuant to 15 U.S.C. § 1692k Plaintiff seeks damages, reasonable attorney's fees and costs from Turtle Creek.

### COUNT V:  VIOLATIONS OF THE TEXAS FINANCE CODE
### BY TURTLE CREEK ASSETS LTD.

100. The previous paragraphs are incorporated into this Count as if set forth in full.

101. The act(s) and omission(s) of Turtle Creek and its representative(s), employee(s) and/or agent(s) violated Tex. Fin. Code 392.101 and §392.301(a)(7) and §392.302(1)&(2) and §392.304(a)(4)&(5)&(8)&(14)&(19) and §392.306.

102. Pursuant to Tex. Fin. Code § 392.403, Plaintiff seeks damages, reasonable attorney's fees and costs from Turtle Creek.

103. Pursuant to Tex. Fin. Code § 392.403, Plaintiff seeks an injunction against Turtle Creek enjoining it from future violations of the Texas Finance Code as described herein.

### COUNT VI:  INVASION OF PRIVACY (INTRUSION ON SECLUSION)
### BY TURTLE CREEK ASSETS, LTD.

104. In the alternative, without waiving any of the other causes of action herein, without waiving any procedural, contractual, statutory, or common-law right, and incorporating all other allegations herein to the extent they are not inconsistent with the cause of action pled here, Turtle Creek is liable to Plaintiff for invading Plaintiff's privacy (intrusion on

seclusion).   Turtle Creek intentionally intruded on Plaintiff's solitude, seclusion, or private affairs, and such intrusion would be highly offensive to a reasonable person.

105. Plaintiff suffered actual damages from Turtle Creek as a result of Turtle Creek's intrusion.

### COUNT VII:  VIOLATIONS OF THE FDCPA 15 U.S.C. § 1692, et seq. BY GORDON ENGLE

106. The previous paragraphs are incorporated into this Count as if set forth in full.

107. Because of his instructions and influence over the conduct of the people working for Turtle Creek, Engle is responsible for the act(s) and omission(s) of Turtle Creek and their respective representative(s), employee(s) and/or agent(s) and their violations of 15 U.S.C. §1692d(2)&(6) and §1692e(2)&(4)&(5)&(8)&(10)&(11) and § 1692g(a)(2).

108. Pursuant to 15 U.S.C. § 1692k Plaintiff seeks damages, reasonable attorney's fees and costs from Engle.

### COUNT VIII:  VIOLATIONS OF THE TEXAS FINANCE CODE BY GORDON ENGLE

109. The previous paragraphs are incorporated into this Count as if set forth in full.

110. Because of his instructions and influence over the conduct of the people working for Turtle Creek, Engle is responsible for the act(s) and omission(s) of Turtle Creek and their respective representative(s), employee(s) and/or agent(s) and their violations of Tex. Fin. Code 392.101 and §392.301(a)(7) and §392.302(1)&(2) and §392.304(a)(4)&(5)&(8)&(14)& (19) and §392.306.

111. Pursuant to Tex. Fin. Code § 392.403, Plaintiff seeks damages, reasonable attorney's fees and costs from Engle.

112.    Pursuant to Tex. Fin. Code § 392.403, Plaintiff seeks an injunction against Engle enjoining him from future violations of the Texas Finance Code as described herein.

### COUNT IX:  INVASION OF PRIVACY (INTRUSION ON SECLUSION) BY GORDON ENGLE

113.    In the alternative, without waiving any of the other causes of action herein, without waiving any procedural, contractual, statutory, or common-law right, and incorporating all other allegations herein to the extent they are not inconsistent with the cause of action pled here, Engle is liable to Plaintiff for invading Plaintiff's privacy (intrusion on seclusion).   Engle intentionally intruded on Plaintiff's solitude, seclusion, or private affairs, and such intrusion would be highly offensive to a reasonable person.

114.    Plaintiff suffered actual damages from Engle as a result of Turtle Creek's intrusion at his instruction.

### COUNT X:  VIOLATIONS OF THE FDCPA 15 U.S.C. § 1692, et seq. BY BELINDA GIBBONS

115.    The previous paragraphs are incorporated into this Count as if set forth in full.

116.    Because of her instructions and influence over the conduct of the people working for CRDS, Gibbons is responsible for the act(s) and omission(s) of CRDS and its representative(s), employee(s) and/or agent(s) and their violations of 15 U.S.C. §1692d(2)&(6) and §1692e(2)&(4)&(5)&(8)&(10)&(11) and § 1692g(a)(2).

117.    Pursuant to 15 U.S.C. § 1692k Plaintiff seeks damages, reasonable attorney's fees and costs from Gibbons.

### COUNT XI:  VIOLATIONS OF THE TEXAS FINANCE CODE BY BELINDA GIBBONS

118.    The previous paragraphs are incorporated into this Count as if set forth in full.

119.    Because of her instructions and influence over the conduct of the people working for CRDS, Gibbons is responsible for the act(s) and omission(s) of CRDS and its representative(s), employee(s) and/or agent(s) and their violations of Tex. Fin. Code 392.101 and §392.301(a)(7) and §392.302(1)&(2) and §392.304(a)(4)&(5)&(8)&(14)&(19) and §392.306.

120.    Pursuant to Tex. Fin. Code § 392.403, Plaintiff seeks damages, reasonable attorney's fees and costs from Gibbons.

121.    Pursuant to Tex. Fin. Code § 392.403, Plaintiff seeks an injunction against Gibbons enjoining her from future violations of the Texas Finance Code as described herein.

### COUNT XII:  INVASION OF PRIVACY (INTRUSION ON SECLUSION) BY BELINDA GIBBONS

122.    In the alternative, without waiving any of the other causes of action herein, without waiving any procedural, contractual, statutory, or common-law right, and incorporating all other allegations herein to the extent they are not inconsistent with the cause of action pled here, Gibbons is liable to Plaintiff for invading Plaintiff's privacy (intrusion on seclusion).  Gibbons intentionally intruded on Plaintiff's solitude, seclusion, or private affairs, and such intrusion would be highly offensive to a reasonable person.

123.    Plaintiff suffered actual damages from Gibbons as a result of CRDS's intrusion at her instruction.

### JURY TRIAL DEMAND

124.    Plaintiff is entitled to and hereby demands a trial by jury.

## **DEMAND FOR RELIEF**

WHEREFORE, Plaintiff requests that the Court grant the following:

125. Judgment in favor of Plaintiff and against Check Recovery & Diversified Services LLC as follows:

   a. Actual damages pursuant to 15 U.S.C. 1692k(a)(1);

   b. Statutory damages in the amount of $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2);

   c. Reasonable attorneys fees and costs pursuant to 15 U.S.C. § 1692k(a)(3);

   d. Damages and reasonable attorney's fees and costs pursuant to Tex. Fin. Code § 392.403;

   e. Statutory damages in the amount of not less than $100.00 pursuant to Tex. Fin. Code § 392.403;

   f. An injunction permanently enjoining it from future violations of the Texas Finance Code as described above, pursuant to Tex. Fin. Code §392.403(1);

   g. Exemplary damages pursuant to the common law of Texas, see, e.g. *Waterfield Mortgage Co., Inc. v. Rodriguez*, 929 S.W.2d 641, 645 (Tex. App. 1996);

   h. Such other and further relief as the Court deems just and proper.

126. Judgment in favor of Plaintiff and against Turtle Creek Assets, LLC, as follows:

   a. Actual damages pursuant to 15 U.S.C. 1692k(a)(1);

   b. Statutory damages in the amount of $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2);

   c. Reasonable attorneys fees and costs pursuant to 15 U.S.C. § 1692k(a)(3);

      d. Damages and reasonable attorney's fees and costs pursuant to Tex. Fin. Code § 392.403;

      e. Statutory damages in the amount of not less than $100.00 pursuant to Tex. Fin. Code § 392.403;

      f. An injunction permanently enjoining it from future violations of the Texas Finance Code as described above, pursuant to Tex. Fin. Code §392.403(1);

      g. Exemplary damages pursuant to the common law of Texas, see, e.g. *Waterfield Mortgage Co., Inc. v. Rodriguez*, 929 S.W.2d 641, 645 (Tex. App. 1996);

      h. Such other and further relief as the Court deems just and proper.

127.     Judgment in favor of Plaintiff and against Gordon Engle as follows:

      i. Actual damages pursuant to 15 U.S.C. 1692k(a)(1);

      j. Statutory damages in the amount of $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2);

      k. Reasonable attorneys fees and costs pursuant to 15 U.S.C. § 1692k(a)(3);

      l. Damages and reasonable attorney's fees and costs pursuant to Tex. Fin. Code § 392.403;

      m. Statutory damages in the amount of not less than $100.00 pursuant to Tex. Fin. Code § 392.403;

      n. An injunction permanently enjoining him from future violations of the Texas Finance Code as described above, pursuant to Tex. Fin. Code §392.403(1);

      o. Exemplary damages pursuant to the common law of Texas, see, e.g. *Waterfield Mortgage Co., Inc. v. Rodriguez*, 929 S.W.2d 641, 645 (Tex. App. 1996);

      p. Such other and further relief as the Court deems just and proper.

128. Judgment in favor of Plaintiff and against Belinda Gibbons as follows:

  q. Actual damages pursuant to 15 U.S.C. 1692k(a)(1);

  r. Statutory damages in the amount of $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2);

  s. Reasonable attorneys fees and costs pursuant to 15 U.S.C. § 1692k(a)(3);

  t. Damages and reasonable attorney's fees and costs pursuant to Tex. Fin. Code § 392.403;

  u. Statutory damages in the amount of not less than $100.00 pursuant to Tex. Fin. Code § 392.403;

  v. An injunction permanently enjoining her from future violations of the Texas Finance Code as described above, pursuant to Tex. Fin. Code §392.403(1);

  w. Exemplary damages pursuant to the common law of Texas, see, e.g. *Waterfield Mortgage Co., Inc. v. Rodriguez*, 929 S.W.2d 641, 645 (Tex. App. 1996);

  x. Such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ Jeffrey D. Wood
Jeffrey D. Wood, Esq.
ArkBN: 2006164
The Wood Firm, PLLC
14524 Cantrell Rd.
Suite 140-208
Little Rock, AR  72223
TEL:  682-651-7599
FAX:  888-598-9022
EMAIL:  jeff@mmlaw.pro
Attorney for Plaintiff